Citation Nr: 1725239 
Decision Date: 06/30/17 Archive Date: 07/10/17

DOCKET NO. 10-27 121 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Phoenix, Arizona


THE ISSUES

Entitlement to an initial rating in excess of 30 percent for posttraumatic stress disorder (PTSD), prior to February 6, 2013.

Entitlement to a rating in excess of 50 percent for PTSD, for the period from 
February 6, 2013 through September 16, 2014.


REPRESENTATION

Appellant represented by: Vietnam Veterans of America


WITNESS AT HEARING ON APPEAL

Appellant



INTRODUCTION

The Veteran served on active duty from March 1969 to March 1973. 

These matters come before the Board of Veterans' Appeals (Board) from a May 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Milwaukee, Wisconsin, which denied an increased rating for anxiety disorder. Subsequently, in a June 2010 rating decision, the Veteran was granted service-connection for PTSD in lieu of the previous diagnosis of anxiety disorder, and the 30 percent rating was continued. Jurisdiction of the Veteran's claim was transferred to the RO in Phoenix, Arizona. 

Rating decisions in April 2013 and January 2015, granted increased ratings of 50 percent, effective February 6, 2013, and 70 percent, effective September 16, 2014. As the increased ratings awarded do not represent the maximum rating available for these disabilities, the Veteran's claims remained in appellate status. See AB v. Brown, 6 Vet. App. 35 (1993).

The Veteran testified at a February 2014 Board hearing before a Veterans Law Judge (VLJ) by videoconference from the RO. A transcript of that hearing is associated with the claims file. After the Board's June 2014 remand, a March 2016 letter notified the Veteran that the VLJ who conducted his hearing was no longer employed by the Board, and asked him if he desired an additional hearing by the VLJ who would decide his case. He was informed that if the Board did not receive a response to that notification within 30 days, it would presume he did not want an additional hearing. No response was received. As such, the Board presumes that the Veteran does not want an additional hearing.

In May 2016, the Board denied the Veteran's claim for entitlement to a rating in excess of 30 percent for PTSD prior to February 6, 2013, a rating in excess of 50 percent for PTSD from February 6, 2013, to September 16, 2014, and a rating in excess of 70 percent PTSD from September 16, 2014. The Veteran, in turn, appealed the Board's denial to the United States Court of Appeals for Veterans Claims (Court). However, the Veteran elected not to pursue an appeal concerning entitlement to a rating in excess of 70 percent as of September 16, 2014. In April 2017, the Court granted a Joint Motion for Partial Remand filed by representatives for both parties, vacating the May 2016 Board's decision and remanding those portions of the decision that denied entitlement to an increased rating for PTSD, in excess of 30 percent prior to February 6, 2013, and in excess of 50 percent from February 6, 2013, to September 16, 2014, for readjudication to the Board for further proceedings consistent with the Joint Motion. 

Regarding the matter of the Veteran's representation, the Veteran's claims file reflects that, in May 2016, he executed a VA Form 21-22 appointing Disabled American Veterans (DAV) as his representative. Pursuant to 38 C.F.R. § 20.1304(b) (2016), any request for a change of representation after 90 days following the mailing of notice to the Veteran that an appeal has been certified to the Board for appellate review and that the appellate record has been transferred to the Board must be mailed to the Board with a good cause explanation. Here, the Veteran's appeal was certified to the Board in September 2015, and no good cause explanation has been provided for a change in representation. Moreover, in this case, the Board finds the matter of representation moot, as the Veteran has contended that he is entitled to a 70 percent rating for his PTSD and the Board has granted 70 percent for his PTSD for all periods on appeal, as discussed below. Although the Veteran at times used the term "at least" 70 percent, his consistent request for this rating in his written and oral statements, and his representative's statement during the Board hearing, discussed below, indicating that the Veteran met the 70 percent criteria and that was what he would like a decision on, combined with the Veteran's decision not to pursue an appeal concerning entitlement to a rating in excess of 70 percent as of September 16, 2014, reflects that he is satisfied with the 70 percent rating the Board is granting. Cf. AB v. Brown, 6 Vet. App. 35, 39 (1993) (a veteran is presumed to be seeking the maximum possible rating unless he indicates otherwise) (emphasis added). Under these circumstances, the Board determines that there has been no change in representative as to the matters currently before the Board, and continues to recognize VVA as the Veteran's representative in this appeal. 


FINDINGS OF FACT

1. For the period prior to February 6, 2013, the evidence is at least evenly balanced as to whether, service-connected PTSD has been productive of occupational and social impairment which more nearly approximates deficiencies in most areas, including work, social relations, and mood, but has not more nearly approximated total social and occupational impairment.
 
2. For the period from February 6, 2013 to September 16, 2014, the evidence is at least evenly balanced as to whether the service-connected PTSD has been productive of occupational and social impairment which more nearly approximates deficiencies in most areas, including work, social relations, and mood, but it has not more nearly approximated total social and occupational impairment.


CONCLUSIONS OF LAW

1. Resolving reasonable doubt in the Veteran's favor, the criteria for an initial 70 percent rating, but no higher, for PTSD, have been met for the period prior to February 6, 2013. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, 4.130, Diagnostic Code (DC) 9411 (2016).

2. Resolving reasonable doubt in the Veteran's favor, the criteria for a 70 percent rating, but no higher, for PTSD, have been met for the period from February 6, 2013 to September 16, 2014. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, 4.130, Diagnostic Code (DC) 9411 (2016).






REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VCAA

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159. 

Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1); Quartuccio v. Principi, 16 Vet. App. 183 (2002). 
Generally, VCAA notice, as required by 38 U.S.C.A. § 5103(a), must be provided to a claimant before the initial unfavorable AOJ decision on a claim for VA benefits. See Pelegrini v. Principi, 18 Vet. App. 112 (2004).

This appeal arises from the Veteran's disagreement with the initial ratings assigned in connection with the grant of service connection for his PTSD. Where an underlying claim for service connection has been granted and there is disagreement as to such "downstream" questions, the claim has been substantiated and there is no need to provide additional VCAA notice or prejudice from absent VCAA notice. Hartman v. Nicholson, 483 F.3d 1311, 1314-15 (Fed. Cir. 2007). 

The April 2017 Joint Motion found that the May 2016 Board decision included an inadequate statement of the reasons and bases for denying the Veteran's claims for entitlement to a rating in excess of 30 percent for PTSD prior to February 6, 2013 and a rating in excess of 50 percent for PTSD from February 6, 2013, to September 16, 2014. With regard to the period prior to February 6, 2013, the May 2016 Board decision concluded that no examiner had indicated that the Veteran
lacked insight or judgment or any indication of suicidal ideations, despite a May 2008 Vet Center intake form that noted the presence of suicidal thoughts and risk of aggressive thoughts towards others, as well as a May 2010 VA examination, in which the Veteran discussed "feelings in the past of being suicidal," albeit denying current ideation. Regarding the period from February 6, 2013, to September 16, 2014, the May 2016 Board decision did not discuss a June 2013 suicide risk assessment that documented that "infrequent, low intensity vague suicidal ideation exists" and the February 2013 VA examiner's conclusion that the Veteran experienced "difficulty adapting to stressful circumstances," which are listed as symptoms in the criteria for a 70 percent rating. In this decision, the Board has considered this evidence in addition to the other evidence in the record, in awarding the Veteran a 70 percent rating for both periods on appeal. Accordingly, the Board finds that this decision complies with the instructions in the April 2017 Joint Motion. 

Regarding the duty to assist, the Board also finds that VA has adequately fulfilled its obligation to assist the Veteran in obtaining the evidence necessary to substantiate his claim. All available relevant evidence pertaining to the Veteran's claim has been obtained. The evidence includes his VA treatment records, VA examination reports, and statements from the Veteran. The Board will, therefore, proceed to the merits of the appeal.

Analysis

Disability evaluations are determined by application of the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. An evaluation of the level of disability present must also include consideration of the functional impairment of the Veteran's ability to engage in ordinary activities, including employment. 38 C.F.R. § 4.10. When a question arises as to which of two ratings apply under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7.

Where an award of service connection for a disability has been granted and the assignment of an initial evaluation for that disability is disputed, separate evaluations may be assigned for separate periods of time based on the facts found. In other words, the evaluations may be staged. Fenderson v. West, 12 Vet. App. 119 (1999). Because the RO has already assigned staged ratings for the disability at issue, the Board will consider the propriety of the assigned rating for the disability at each stage, as well as whether any further staged rating of the disability is warranted. 

The Veteran is in receipt of an initial 30 percent rating for PTSD prior to February 6, 2013, and 50 percent from February 6, 2013 to September 16, 2014, pursuant to 38 C.F.R. § 4.130, DC 9411. All psychiatric disabilities are evaluated under a general rating formula for mental disorders. Under the general rating formula, a 30 percent rating requires a showing of occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, and recent events).

A 50 percent rating is warranted for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short-and long-term memory (e.g. retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing effective work and social relationships.

A 70 percent rating is warranted when the psychiatric disorder results in occupational and social impairment with deficiencies in most areas such as work, school, family relations, judgment, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such an unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); and inability to establish and maintain effective relationships.

A total schedular rating of 100 percent is warranted when the disorder results in total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of mental and personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name.

When determining the appropriate disability evaluation to assign, the Board's primary consideration is the veteran's symptoms, but it must also make findings as to how those symptoms impact the veteran's occupational and social impairment. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 118 (Fed. Cir. 2013); Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). Because the use of the term "such as" in the rating criteria demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, the Board need not find the presence of all, most, or even some, of the enumerated symptoms to award a specific rating. Mauerhan, 16 Vet. App. at 442; see also Sellers v. Principi, 372 F.3d 1318, 1326-27 (Fed. Cir. 2004). Nevertheless, all ratings in the general rating formula are also associated with objectively observable symptomatology and the plain language of the regulation makes it clear that a veteran's impairment must be "due to" those symptoms, a veteran may only qualify for a given disability by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration. Vazquez-Claudio, 713 F.3d at 118.

Another factor to take into consideration is the GAF (Global Assessment of Functioning) scale, which reflects psychological, social, and occupational functioning of a hypothetical continuum of mental health illness. See Richard v. Brown, 9 Vet. App. 266, 267 (1996) (citing the Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV). Scores ranging from 41 to 50 reflect serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). A score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peer or coworkers). GAF scores between 61 and 70 reflect some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, with some meaningful interpersonal relationships.

I. Prior to February 6, 2013

The Veteran asserts that prior to February 6, 2013, his diagnosed PTSD manifested to a degree worse than that contemplated by the initial 30 percent rating assigned. 

An August 2007 VA treatment record reflects a negative depression screen. 

A December 2007 VA treatment record noted the Veteran was overwhelmed by his neuropathy, back pain, and was recovering from a total hip replacement. He was emotional with poor ability to control them. The physician noted multiple issues contributed to depression besides chronic pain, including loss of disabled child, loss of wife unexpectedly, and now loss of his legs and dealing with significant leg pain. He was disabled with only 17 days left to complete prior to his 30 year retirement at GM. He has also lost the pastoral position he once held when he had to be home more. He reported feeling supported by three adult children and that he is very close to them. He reported being on duloxetine at 60mg for six weeks and reported no benefit noted in mood or pain and would rather be on Zoloft, given that the Cymbalta did not appear to be helpful. He is unsure if his antidepressant is making him feel worse or more anxious. The physician provided diagnoses of depression and PTSD triggered by losses and pain. A GAF score of 65 was assigned. Based on the reported symptoms, it was noted that Veteran met the criteria for depressive episode (minor depression or depression in partial remission).

In a January 2008 statement, the Veteran's spouse (second marriage) stated the Veteran had nightmares, and trouble sleeping at night a couple days a week. He does not like to watch war movies as they give him nightmares and brings back bad memories. She described him as getting more short and angry.

In a January 2008 VA treatment record, the physician noted that as of mid-December 2007 when the Veteran presented for an initial evaluation, he complained of ongoing grief related to the death of his first wife three years ago. He produced a PCL score of 63 indicating a high level of symptoms of PTSD. The social worker opined that the Veteran was grieving the death of his first wife and clearly depressed due to physical problems/pain and loss of focus of life given new medical problems. He struggled with memories of Vietnam. The social worker diagnosed the Veteran with Axis I major depression, recurrent, and PTSD with a GAF score of 65 to indicate mild symptoms. The Veteran reported significant pain with peripheral neuropathy along with back problems. 

A January 2008 Vet Center treatment record notes the Veteran's upbeat attitude and "old boy" demeanor belies the level of symptomology that the Veteran experiences. 
In February 2008, the Veteran completed neuropsychological testing. It notes the Veteran complained of depression following the death of his daughter in 1987 and his wife in 2004. He also reported a mildly significant level of depressive symptoms on a questionnaire and he was taking Zoloft. His neuropsychological testing was within normal limits. The Veteran produced results indicating mainly intact cognitive functioning although a deficit was present on the test of verbal immediate memory. It was opined that the Veteran had sufficient cognitive abilities to return to school.

A VA examination was conducted in April 2008. Regarding his mental health, the Veteran described getting depressed about his neuropathy diagnosed in February 2007 as he can't do things, and the loss of his first child in 1987 and his first wife four years ago. He reported his depression started when his daughter was born at 17 days old and she was diagnosed with meningitis. He indicated that his symptoms are mild now. Regarding his symptoms of PTSD due to his combat exposure in Vietnam, the Veteran endorsed having bad dreams about Vietnam once in a while once every 2-3 months. He stated that he thinks about Vietnam about twice per week or once per month. The examiner noted the Veteran described fairly infrequent symptoms of PTSD and more ongoing symptoms of depression all to a mild severity a duration that was described as fairly short with remissions that were described as lasting for up to one month with improved capacity for adjustment during those periods of time. 

The examiner indicated, overall the Veteran described a good psychosocial adjustment and progression through developmental milestones pre-military. He completed his junior year of high school and worked, kept up with routine responsibilities of self-care, family role functioning, enjoyed good physical health, social/interpersonal relationships, and recreation/leisure pursuits. 

Regarding his educational and occupational history, he earned a technical degree in computers and he was also an EMT. He worked at General Motors for 30 years doing assembly work and has been off since February 2007 due to his neuropathy. He worked over 170 hours over the past year to keep his retirement. He stated that he likes to work and misses the people and the work. The Veteran denied any mental health problems at work other than feeling sad after his wife died. The Veteran had been married for over 28 years with his first wife. He has been remarried for 3 years. The Veteran described having a pretty good relationship with his current wife and his 4 children and 2 grandchildren. Socially, the Veteran stated that he has some friends and he enjoys participating in Tai Chi. He also likes to spend time with his children and grandchildren and spends his free time studying Tai Chi, going out to breakfast with his friends on Friday mornings, and working around the house. He endorsed very rare alcohol use to a non-problematic degree and he denied any drug use. He denied any recent history of assaultive behavior, as well as any history of suicide attempts. 

Mental status examination revealed no impairment of thought process or communication, as well as delusions or hallucinations during the interview. 
He denied any suicidal or homicidal thoughts and he endorsed a good history of maintaining minimal personal hygiene and other basic activities of daily living. He was oriented to person, place, and time. He endorsed problems with both his long and short term memory, but not to a significant extent. He denied obsessive or ritualistic behaviors, diagnosable panic attacks and impaired impulse control. The rate and flow of the Veteran's speech were within normal limits. The Veteran stated that he has felt depressed since his daughter was born back in February 1977, and he described having ongoing anxiety about finances and work. 

Regarding his PTSD symptoms, the examiner noted symptoms of persistent re- experiencing recurrent and intrusive distressing memories of the event, recurrent distressing dreams of the event, intense psychological distress, avoidance efforts to
avoid thoughts feelings or conversations associated with the trauma, efforts to avoid activities places or people that arouse recollections of the trauma, inability to recall an important aspect of the trauma, feeling of detachment or estrangement from others, persistent increased arousal, difficulty falling or staying asleep, irritability or outbursts of anger, difficulty concentrating, and exaggerated startle response. The Veteran denied that these symptoms have caused him clinically significant distress or impairment and stated that he learned to live with it and that he gets along with most, and he has been a good husband, father, and grandfather. He reported no problems at work and he had friends over the years. He reported that his symptoms are generally of short duration, infrequent frequency, and mild severity.
Thus, based on a review of the Veteran's medical records as well as the
Veteran's verbal report, the examiner concluded the Veteran did not have PTSD at that time because he failed to endorse that these symptoms have caused his clinically significant distress or impairment, and rather, given his complaints of many mild symptoms of PTSD, the examiner provided diagnoses with anxiety disorder not otherwise specified, chronic mild severity with a current GAF equaling 65 to indicate mild symptoms. 

The examiner opined that it is at least as likely as not that the Veteran's anxiety disorder is due to his combat exposure during his time in Vietnam and it is also at least as likely as not that this anxiety is related to the symptoms of sleep difficulty and nervousness that the Veteran reported during his time in the military service. The examiner also diagnosed the Veteran with depression, not otherwise specified, chronic mild severity, also with a GAF score of 65 to indicate mild symptoms and that it is not related to his service, and rather the Veteran's depression is more likely than not related to the loss of his daughter and his wife. The examiner explained that the Veteran does endorse many mild symptoms of PTSD, such as persistent experiencing avoidance and increased arousal, all of which impact the Veteran's quality of life to a mild degree, and that he does not have PTSD because his symptoms have not caused him clinically significant distress or impairment. Based on a review of the Veteran's medical records, as well as the Veteran's verbal report, the examiner opined that the Veteran's PTSD symptoms were not severe enough to interfere with occupational and social functioning and not severe enough to require continuous medication as described above.

A March 2008 VA treatment record noted the Veteran complained of current memory lapses. He described his memory functioning as "almost half-way." He believes his memory problems started after the death of his wife. He may have some lifelong limitations in cognitive functioning. He complained of fatigue and now sleeps about 10 hours per night. He was pleasant and cooperative and generally appeared to put forth adequate effort during the testing session. The Veteran exhibited mild level of depressed mood, included mild disturbance of sleep and appetite and reduced initiative, decision-making ability. He denied suicidal ideation. His cognitive tests results were consistent with mainly intact cognitive functioning although a deficit was present on a test of verbal immediate memory. 

A May 2008 Vet Center intake assessment noted the Veteran experienced nightmares, anger outbursts, numbed emotions, flashbacks, triggers, insomnia, hypervigilance, and detachment. The Veteran reported suicidal thoughts and aggressive thoughts towards others. There was evidence of depression described as recent weight gain change, decreased energy level, diminished sex drive, and recent losses. Mental status examination was normal and the Veteran was described as friendly and cooperative. The Veteran reported that his medication decreased his energy and that he finds energy and motivation when he socializes. He reported having thoughts of suicide one or two times, and the last time was when his wife passed. He has since remarried and she has been very good for him. The Veteran stated he does not get aggressive unless someone pushes him to that point. The Veteran indicated being triggered about Vietnam on a monthly basis, and has flashbacks during stressful situations. He reported that he does not avoid triggers, but that he is cautious about his participation so as not to trigger him. He reported that he feels guarded and hypervigilant, and has difficulty connecting with people. He reported he easily gets frustrated and annoyed. 

A November 2008 VA treatment record noted the Veteran's spouse reported the Veteran becomes moody and avoids talking every November, but that he spontaneously reverts to his normal self for the rest of the year. The Veteran expressed no awareness of this change. He described a traumatic experience on his November birthday in Vietnam during recovery of scattered/incomplete remains of an aviator whose plane crashed outside their perimeter. He stated he could not remember anything else from that month. She also described perceiving a simmering anger in him, but she had never felt at risk from Veteran. She questioned him as to whether the anger was directed at her and the Veteran responded he feels the emotion, but does not know what it is about and he expressed discomfort in discussing emotions. 

A November 2009 medical letter from a social worker at the Vet Center stated that his wife was ill, which aggravated his PTSD symptoms, especially since it triggered feelings of grief and helplessness that started with incidences in the military and were increased when his first wife died of a long illness.

In a January 2009 VA examination, the examiner indicated that the Veteran demonstrated a condition that was not diagnosed as PTSD, but anxiety disorder. The Veteran reported he was having bad dreams about Vietnam more often, that he can "chew it off sometimes," and had been working on coping. He reported that it got worse after some stressful events started four weeks ago. Regarding how he copes with all of this stress, the Veteran described that he does a lot of studying and has been getting a little bit better. The Veteran continued to endorse ongoing mild depression, sometimes, he gets depressed, but he tries to "kick it out" and that he made peace with the loss of his previous wife and daughter. He described having some ongoing anxiety about his adult children and their families. He denied impaired impulse control. The Veteran enjoys spending his free time at the YMCA studying Tai Chi and Reiki. He also enjoys helping his family. 

On review of the medical history and an in-person interview, the examiner determined that the Veteran's psychological condition did not meet the criteria for a diagnosis of PTSD. The examiner noted that the Veteran had symptoms of mild anxiety and depressed mood, with some indications of PTSD such as increased arousal, recurrent thoughts, and avoidance of things that reminded him of his time in Vietnam. However, the examiner concluded that the Veteran's symptoms did not amount to clinically significant distress or impairment. The Veteran was noted to be fully oriented, with normal thought process, and appropriate hygiene. The examiner noted adequate recreational and leisure pursuits and social and interpersonal relationships. The Veteran noted he maintained hobbies and a good relationship with his family. The examiner recorded some memory issues, and the Veteran denied any suicidal or homicidal thoughts or ideation, delusions or hallucinations, or ritualistic behavior. Overall, a GAF score of 65 was assigned. 

During the May 2010 examination, the Veteran was given an Axis I diagnosis of PTSD, with depressive and anxiety disorder, not otherwise specified, with a GAF score of 61. The Veteran demonstrated symptoms such as depressed mood and ongoing anxiety, difficulty sleeping, and mild memory loss poor long and short term memory much of the time. Additionally, the Veteran expressed issues with irritability, difficulty concentrating, and exaggerated startle response. Circumstantial speech at times was noted and he did not report panic attacks more than once a week, difficulty in understanding complex commands, as well as impairment of short and long term memory. There was no impaired judgment or impaired abstract thinking. There were no significant disturbances in mood except during situational stressors. He reported some loss of motivation at times having to push himself to do things, and that he does not have significant difficulty in establishing or maintaining effective social relationships. Overall, the examiner found no clinically significant functional distress or impairment. The examiner noted that the Veteran was well groomed, maintained personal hygiene, oriented with normal thought process and judgment, and had satisfactory social relationships and interpersonal skills. The examiner concluded that the Veteran's symptoms generally caused mild impairment in his ability to maintain appropriate psychosocial functioning. 

2009 Vet Center records reflect the Veteran's spouse reported the Veteran had been abrupt or angry with something that happened around the house and the Veteran stated he was "gone." He went deer hunting with his son and he greatly valued the time alone with his son and stated he told his son more about Vietnam than he had ever before. He reported he and his spouse were getting along better because they began joint counseling. The Veteran described being at a party and when a discussion of Vietnam came up, he experienced an overwhelming sense of sadness and loss, and could not stop crying and thinking about losses there. The Veteran's spouse reported the Veteran's startled response and that he punched her in the shoulder when she went to comfort him. He explained he was unaware that he punched her and he was startled by the bee sting and then her touching him on the shoulder caused him to lash out. 

A September 2009 VA treatment record noted the Veteran met the criteria for a PTSD diagnosis based on his report of symptoms, including irritability and angry outbursts, having difficulty concentrating, super-alert, feeling distant or cutoff from people, and being jumpy or easily startled. He reported that he has difficulty getting close to other people, difficulty trusting, and belief about danger everywhere, need to be in control, and need to be hypervigilant. A GAF score of 60-63 was assigned. 

In his September 2009 statement labeled as notice of disagreement, the Veteran stated his PTSD should be rated as 50 percent disabling. He reported having panic attacks once in a week and sometimes three in one day, depending on the events in his life at that time. He also reported having memory problems worse than mild, as he has to write things down all the time. He reported having lack of motivation; unless he continues to push himself and that he has problems following direction or any type of complex demands. He also reported having problems with mood swings.
 
A January 2010 counseling summary reflects the Veteran's was treated by the counselor from March 2009 to May 2009 and his symptoms were consistent with a diagnosis of PTSD. She noted the Veteran described experiencing intrusive distressing thoughts and images that recall his service in Vietnam with difficulty discovering exact triggers, but reported crying for no reason. The Veteran also described disturbing dreams associated with service time and when changes in daily schedule occur, he experiences an increase in nightmares. He experienced intense distress when exposed to reminders of Vietnam, extreme emotional response, and overwhelming feelings when viewing a painting of the Vietnam Memorial Wall. 

He described experiencing physiological reactivity associated with fear and anger when exposed to the internal and external cues that symbolize service in Vietnam and when he heard a helicopter above his home, it scared him. He described experiencing increased heart rate anxiety and difficulty breathing, pattern of avoidance behavior related to Vietnam because of associated negative emotional response, such as crying, feelings of anxiety, and depression. He reported a pattern of avoidance of activity, places, or people associated with Vietnam because he is fearful of the negative emotions that may be triggered. He described feeling a sense of detachment from others and a lack of trust in friendships and wait for the other shoe to drop. He indicated feeling a need to protect himself from getting hurt, a pattern of irritability that was not present before service in Vietnam, and described being guarded which often comes across as being irritable. He described a pattern of lack of concentration, exaggerated startle response, reacting in a defensive manner when surprised, sad affect, lack of energy, social withdrawal, and guilt feelings as part of a depressive reaction, a pattern of interpersonal conflict especially in regard to intimate relationships. He described continual arguments and conflict with step daughter, a sense of pervading fear, describing a lack of sense of power, difficulty setting limits and paranoia, dissociation regarding traumatic events such as removing self from feelings/emotions/pain.

In his June 2010 substantive appeal, the Veteran asserts he is entitled to at least a 70 percent rating, because he has panic attacks, bad memory, following simple directions, trouble concentrating, irritability, angry outbursts, difficulty making friends, and he only has one friend he can count on. He reported he was brought up not to show any weakness and was taught to put one foot forward, no matter what. He indicated he was taught to be neat, clean, and friendly, but that he has to push himself to overcome his symptoms. 

2010 Vet Center records reflect the Veteran's reports of the events that occurred in Vietnam, and the guilt he felt in not being able to save his fellow servicemen. He exhibited sadness and tears during treatment. 

A May 2011 VA treatment record notes the Veteran reported losing his temper during conflicts with wife and he had hit her with an open hand with no visible injury, and that she had hit him first. He reported that this is a rare occurrence and happens approximately once a year. A GAF of 60 was assigned.

At the June 2011 VA examination, the VA examiner again provided an Axis I diagnosis of PTSD with chronic depressive disorder. With regard to symptoms, in addition to those symptoms described by the previous examinations, such as disturbed sleep, irritability, and issues with memory and concentration, the Veteran noted some occasions, once a year, of angry outbursts or episodes of violence. The Veteran described no suicidal or homicidal thought, ideations, or plans; panic attacks; obsessive or ritualistic behaviors; hallucinations; or delusions, and was noted to be oriented, appropriately dressed, attentive, and with no signs of impairment judgment or thought process. The examiner noted his condition was only productive of occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks. A GAF score of 61 was assigned. 

In a September 2011 letter, the Veteran's spouse reported that the Veteran has difficulty interacting with people and with those who he feels have wronged him. He gets nervous when hearing a helicopter or loud noises, and when surprised, he raises his fists up and that he had hit her once. She described the Veteran as getting very angry and grumpy at times. 

In a January 2012 statement, the Veteran's spouse stated the Veteran is a good and loving man, but that he has another side to him and he gets angry and becomes withdrawn. He eventually returns to himself. She stated that he loves people, but has a very hard time dealing with them on a long-term basis. 

A June 2012 VA treatment record noted the Veteran's mood is down most of the times. He reported occasional panic attacks, yells at other drivers when frustrated, and had sleep problems. He reported that he enjoyed riding his motorcycle and making jewelry.

July 2012 VA treatment record reflects increased panic attacks of 2 to 3 times per week. His mood has been up and down and he is depressed more days than not. 

In a December 2012 VA treatment record, the Veteran reported he was irritable and is concerned he will get physical with his wife during arguments and plans to attend anger management classes. 

II. From February 6, 2013, to September 16, 2014

The Veteran alleges that his PTSD from February 6, 2013 to September 16, 2014, was worse than the assigned 50 percent rating. An April 2013 rating decision granted an increased rating for PTSD of 50 percent as of February 6, 2013. A January 2015 rating decision granted an increased rating from 50 percent to 70 percent as of September 16, 2014. 

At a February 2013 VA examination, the examiner noted an Axis I diagnosis of PTSD, with a GAF score of 50. On examination, the examiner noted that PTSD manifested with symptoms such as depressed mood, anxiety, sleep disturbance, disturbance in motivation in mood, difficulty in adapting to stressful circumstances, irritability, hypervigilance, exaggerated startle response, and isolation. The Veteran was noted to be in a depressed mood, anxious, and to have an overall disturbance in motivation. The examiner noted that the Veteran's condition was productive of occupational and social impairment with reduced reliability and productivity, which the Board finds is most closely contemplated by a 50 percent rating. 

A March 2013 VA treatment record noted the Veteran's depression was not improving on the maximum dose of Zoloft. His mood had been up and down, with more depressed periods lately. 

A June 2013 VA treatment record noted infrequent, low intensity and vague suicidal ideation, but there was no subjective or objective evidence of intent or plan. He reported he does not like to be alone. He reported having a good relationship with his wife, going out to visit friends, going for coffee, etc. He stated he "works out" at the gym several times a week and had lost weight due to dieting and working out. 

In an August 2013, VA treatment record, the Veteran reported that he had a minor confrontation with a neighbor, but he kept it from escalating. He experienced panic attacks about 4 to 5 times per week. 

In a February 2014 statement, the Veteran's spouse stated the Veteran is kind and good man, but that he has bouts of anger and that he has one good friend, but has difficulty with long-term friendships. 

During his February 2014 Board hearing, the Veteran testified that he meets the criteria for a 70 percent rating. The Veteran's representative stated, "So, we feel that he meets the criteria of 70 percent and that's what we would like to, you know, have decided on." Board Hearing Transcript, at 20. 

III. Analysis

For the following reasons, the Board finds that a rating of 70 percent, but no higher, is warranted for all periods on appeal. Id.; 38 C.F.R. §§ 4.3, 4.7. Regarding the time prior prior to February 7, 2013, the evidence reflects that the Veteran and his spouse reported he has one close friend that he can count on and although he generally gets along with people, they indicated he has difficulty in interacting with people and continuing long-term friendships. The Veteran described instances when conversations about Vietnam came up, he would cry and experience extreme sadness and memories of his combat experience in Vietnam. The extensive treatment records also show the Veteran experienced constant unprovoked irritability with periods of violence. In that regard, the Veteran's spouse indicated the Veteran hit her on at least two occasions and although rare, the Veteran admitted that such events happen about once a year. As the social worker discussed, the Veteran's "old boy" and upbeat personality belies his true symptoms. Although the Veteran has expressed getting along with others, he indicated that he was taught to always appear strong and keep moving forward, despite his discomfort, consistent with the "old boy" and upbeat personality. The Veteran also indicated he has difficulty in expressing his emotions. His wife described that every November, the anniversary of a stressor event, he exhibits a change in behavior and became angry. 

The Veteran also described having suicidal ideation. Although, some of the suicidal ideation occurred after the passing of his first wife, the November 2009 medical letter indicated the Veteran's symptoms of PTSD were exacerbated following her death, as it stirred up and brought back memories related to his combat in Vietnam. Thus, although the examiners indicated that the Veteran described his symptoms as mild and as not causing significant impairment, in reaching such conclusion, the examiners did not specifically address these pertinent records which indicate the Veteran experienced symptoms that were more severe than as described by the Veteran. In addition, the May 2010 VA examination report also noted the Veteran had circumstantial speech. Regarding his occupational impact from the Veteran's PTSD, although the Veteran indicated that he likes to work and misses people and working; it appears that working helped him cope with his symptoms.

Regarding the time period from February 6, 2013 through September 16, 2014. Although, the February 2013 VA examiner concluded the Veteran's symptoms were consistent with a 50 percent rating, the August 2012 VA examiner specifically indicated that the Veteran exhibited difficulty in adapting to stressful circumstances in work-like settings, which is listed in the criteria for a 70 percent rating. Additionally, in the June 2013 VA treatment record, the Veteran reported experiencing suicidal ideation. The report of suicidal ideation supports a 70 percent rating. Bankhead v. Shulkin, No. 15-2404 (Vet. App. May 19, 2017) (holding the language of the regulation indicates that the presence of suicidal ideation alone, that is, a veteran's thoughts of his or her own death or thoughts of engaging in suicide-related behavior, may cause occupational and social impairment with deficiencies in most areas).

Thus, for both periods on appeal, the Board finds that the examiner's finding and the evidence of record supports the finding that the Veteran symptoms more nearly approximated occupational and social impairment with deficiencies in most areas such as work, family relations, judgment, or mood, due to such symptoms as: obsessional rituals which interfere with routine activities; near continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such an unprovoked irritability with periods of violence); and difficulty in adapting to stressful circumstances (including work or a work like setting); and some inability to establish and maintain effective relationships. 

Moreover, the question of whether psychiatric symptoms fall within the criteria for particular ratings is an adjudicatory and not a medical one. See 38 C.F.R. § 3.100(a) (2016) (delegating the Secretary's authority "to make findings and decisions . . . as to the entitlement of claimants to benefits" to, inter alia, VA "adjudicative personnel"); 38 C.F.R. § 4.2 ("It is the responsibility of the rating specialist to interpret reports of examination . . . so that the current rating may accurately reflect the elements of disability present."); VA Adjudication Procedures Manual, M21-1, Part III, Subpart. iv, Chapter 3, Section A.7.i (updated Oct. 28, 2015) ("Do not request a medical authority to make conclusions of law, which is a responsibility inherent to the rating activity"). 

The evidence is, thus, approximately evenly balanced as to whether the symptoms and overall impairment caused by the Veteran's PTSD more nearly approximates the criteria for a 70 percent rating. As such, the reasonable doubt created by this relative equipoise in the evidence must be resolved in favor of the Veteran, and entitlement to a rating of 70 percent is warranted for the periods on appeal. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 4.3.

The Veteran's symptoms have not, however, more nearly approximated the criteria for a 100 percent rating at any time during the periods on appeal and the evidence is not approximately evenly balanced on this point. The VA examiners did not indicate symptoms other than those noted above, and the Veteran did not indicate symptoms listed in the criteria for a 100 percent rating or their equivalent in his statements. Furthermore, the Veteran, himself, has asserted that his symptoms were consistent with at least a 50 or 70 percent rating in his notice of disagreement and substantive appeal, as well as during his February 2014 Board hearing. Moreover, the Veteran stated in the VA examinations that despite having difficulty interacting with people, he gets along well with his family and has friends with whom he meets regularly, and participates in recreational activities. Regarding the Veteran's occupational history, the Veteran reported that he retired due to his non-service-connected neuropathy. He worked at GM for thirty years and he indicated that he enjoyed working and misses the people. Thus, the symptoms and overall impairment caused by the Veteran's PTSD more nearly approximate occupational and social impairment with deficiencies in most areas. In addition, he has not experienced psychosis, gross speech or communication deficit, gross memory deficit, persistent danger of hurting himself, or uncooperative behavior on such a frequent basis as to wholly preclude social activity. He generally presented to outpatient with a cooperative and pleasant attitude and was able to effectively communicate with treating clinicians. Thus, the severity, frequency, and duration of the Veteran's PTSD symptoms and his overall level of impairment do not more nearly approximate the total social and occupational impairment required for a 100 percent rating. 

IV. Other Considerations

In this case, the Veteran has not contended, and the evidence does not reflect, that he has experienced symptoms outside of those listed in the criteria, which include all of the Veteran's psychiatric symptoms, and the Board, therefore, need not consider whether these disabilities cause marked interference with employment. Doucette v. Shulkin, 28 Vet. App. 366 (2017) (the Board is not obligated to analyze whether remand for referral for extraschedular consideration is warranted if "§ 3.321(b)(1) [is] neither specifically sought by [the claimant] nor reasonably raised by the facts found by the Board"(quoting Dingess v. Nicholson, 19 Vet.App. 473, 499 (2006), aff'd, 226 Fed. Appx. 1004 (Fed. Cir. 2007)). 

Finally, a total disability rating based on individual unemployability (TDIU) is considered an element of rating claims when raised by the record. See Rice v. Shinseki, 22 Vet. App. 447 (2009). In this instance, however, the issue is not raised by the record. There is no evidence that the Veteran's PTSD renders him unemployable, nor does the Veteran assert that he is unemployable. Further, the Veteran indicated in his VA examinations that his PTSD does not cause significant impairment and the Veteran indicated he enjoyed and missed working, and that he retired due to his non-service-connected neuropathy. As such, the Board finds that a claim for a TDIU has not been raised by the record pursuant to Rice. Id.


ORDER

Entitlement to an initial rating of 70 percent, but no higher, for PTSD is granted for the period prior to February 6, 2013, subject to controlling regulations governing the payment of monetary awards.

Entitlement to a rating of 70 percent, but no higher, for PTSD is granted for the period from February 6, 2013 to September 16, 2014, subject to controlling regulations governing the payment of monetary awards.



______________________________________________
Jonathan Hager
Veterans Law Judge, Board of Veterans' Appeals




Department of Veterans Affairs